UNITED STATES of America

v.

Carlos BLANCA PEREZ, Defendant.

No. 64 CR. 276.

United States District Court,
S. D. New York.

Feb. 13, 1970.

Whitney North Seymour, U. S. Atty., Southern District of New York, New York City, for plaintiff.

Louis Bender, by Lloyd A. Hale, New York City, for defendant.

Memorandum Opinion On Motion to Dismiss

MOTLEY, District Judge.

Defendant was indicted on March 16, 1964. Now, almost six years later, on February 13, 1970, the government proposes to try him for alleged income tax evasions covering the years 1957, 1958, 1959 and 1960 amounting to $13,000.

On February 3, 1970, defendant moved for an order, pursuant to Rule 48(b), Fed.R.Crim.P., and the Fifth and Sixth Amendments to the Federal Constitution, dismissing the indictment on the ground that defendant has been deprived of his right to a speedy trial and to due process and would be unduly prejudiced by a trial six years after return of the indictment and ten to thirteen years after the alleged events.

Defendant promptly pleaded not guilty to all five counts of the indictment on March 31, 1964. Following the plea, motions were made by both sides and decided on October 1, 1965. Among these

motions was defendant's motion for a bill of particulars. The government filed the requested bill of particulars on January 14, 1966.

Thereafter, the government did not take any steps to bring this case to trial until June 6, 1969, three and a half years later, at which time an assistant United States attorney, who had just been put in charge of the case, placed it on the trial calendar.

The government candidly admits that it can offer no excuse for the delay here except the constitutionally deficient and perennial one of inadequate staff in the United States Attorney's office.

There is no criticism intended here of the present or former United States Attorney or any Assistant United States Attorney. There is no question that the present and former United States Attorney and all of their staff are exceedingly dedicated and overworked men and women. The responsibility for providing a defendant in a criminal case with a speedy trial in this District is, nevertheless, the responsibility of government. It is plainly the responsibility of government to remedy the shortage of Assistant United States Attorneys and judges.

As soon as the case was assigned to the present Assistant United States Attorney in June 1969, he placed it upon the trial calendar on June 6, 1969. An associate of defense counsel moved to adjourn the assignment of the case to a trial judge until June 12, 1969. The request was granted without opposition from the government. [Affidavit in Opposition, Exh. A.] On June 12, the Assistant asked the court to send the case out for a November or December trial. Defense counsel consented to this request. [Affidavit in Opposition, Exh. B.] The government claims that the delay which ensued from June 1969 to date stemmed from the unavailability of a judge assigned to a criminal trial part to try the case until February 1970 and the record supports its claims [Affidavit in Opposition, Exhs. C–F.]

■ In short, the inordinate delay from January 1966 until February 1970 in bringing this case to trial results from governmental inaction. It is just such governmental default that the Sixth Amendment guarantee of a speedy trial rails against. And as defense counsel so aptly rejoins, he has tried 10 tax evasion and other criminal cases in this very Court of more recent "vintage" than the instant case. [Affidavit in Support, p. 5 and Supplemental Affidavit.]

There was, therefore, in this case, a conscious government decision to postpone this trial in favor of other later indicted defendants. There is here an unexcused delay of four years from the filing of the government's bill of particulars until trial, an extended period of delay similar to that which formed a basis for the grant of similar motions in recent cases in this Court. United States v. Skinner, 308 F.Supp. 1221 (S.D.N.Y.1969); United States v. Chin, 306 F.Supp. 397 (S.D.N.Y.1969); United States v. Ketchum, F.Supp. (S.D.N.Y., Aug. 11, 1969, 62 CR. 782); United States v. Roberts, 293 F.Supp. 195 (S.D.N.Y.1968); United States v. Richardson, 291 F.Supp. 441 (S.D.N.Y.1968); United States v. Mann, 291 F.Supp. 268 (S.D.N.Y.1968).

■■ Such a delay is not only undue delay but, when unexcused as here, it is prima facie prejudicial. In such a case, defendant need not show any more particularized prejudice beyond faded memory. *See* United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 91 (2d Cir. 1969). The burden then shifts to the government to show that defendant has not been prejudiced by the delay.

In the mid fifties, defendant took over an upholstery business. One of the counts in the indictment charges him with understating the gross receipts of this business in his 1960 return. The other four counts charge defendant with wilfully attempting to evade his taxes on his income from the business for the four years in question.

Defendant claims that several prospective witnesses, including the former owners of the business and several employees, have either died or left the country since the indictment was returned and, consequently, he would be prejudiced in his efforts at this late date to defend himself.

The government has tried to demonstrate that the prejudice to defendant is not as severe as it appears at first blush and has offered to minimize the prejudice by paying the expense of bringing back two of the witnesses from Germany. One prospective defense witness, Ralph Emmerich, is now living in West Berlin. The government says in its affidavit that it will use its best efforts to produce Mr. Emmerich for an interview, but if these efforts should fail, "a deposition could probably be arranged." Upon oral argument of this motion, the government's attorney advised the court that the government was prepared to pay Mr. Emmerich's fare. Mr. Emmerich's father, another prospective witness, has been found here in New York City.

Although Mr. Kapfer, one of the former owners of the business, who defendant claims would help in his defense, has died, the government has discovered the other former co-owner, Mrs. Kapfer, alive in Neuberg, Germany. It has similarly offered to pay the expense of bringing this witness back. Needless to say, both of the nonresident witnesses are beyond the subpoena power of this Court. Defendant claims that Mr. and Mrs. Kapfer referred employees to him who worked nights and on weekends on a piece work basis and insisted on being paid in cash. Defendant then alleges that he believes he did pay these workers in cash and failed to take a deduction as a labor expense incurred in the business for the monies paid to them. Defendant says that he believes the sums so paid, being a deductible business expense, would eliminate substantially all, if not all, the alleged unreported income. The Emmerichs and one Henry E. Eckhardt are the principal employees who worked part time. Eckhardt has been located by the government.

The government concedes that there is substance to the defendant's claim that certain part time employees, and certain full time employees who worked at night or on weekends, were paid in cash and that these payments may not have been reported by these employees.

Another prospective witness who has died is Nina Braun, the accountant-bookkeeper. However, Miss Braun died in 1958 or 1959 before the indictment here was returned. Her books and records are in the hands of the government and available to defendant. Although her testimony might have been helpful to defendant for the years 1957 and 1958 when she was probably still employed by defendant, her lost oral testimony is not attributable to the delay in this case.

Leslie Saunders, a full time employee, died in 1962 or 1963. Again, his lost testimony cannot be charged to failure to move this case to trial on the part of the government.

The present whereabouts of another full time employee, Pedro Munoz, is, the government admits, unknown. But the government points out that two other former full time employees whose testimony presumably would have been similar to that of Saunders and Munoz are available, although as to one of these, Ralph D'Amado, the government's statement is—it believes he is alive. In sum, the government's position amounts to this: the defendant is not 100% prejudiced, he is only slightly prejudiced.

In addition to the admitted death and dispersal of some of defendant's prospective witnesses, the court finds that there is a prejudice to defendants in criminal cases who are under indictment, as this defendant is, for long periods of time which cannot be overlooked. In cases where the delay between indictment and trial has turned from months to years, the accompanying anxiety becomes manifestly oppressive, especially where, as here, conviction carries a strong proba-

bility of a jail term. See United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

The government insists that the defendant, who has been represented throughout by counsel, has waived his Sixth Amendment right to a speedy trial. United States v. Lustman, 258 F. 2d 475 (2d Cir.1958). But this is only one of the four factors to be considered by this court in deciding a motion to dismiss on Sixth Amendment grounds. United States v. Simmons, 338 F.2d 804, 806 (2d Cir.1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965); United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir.1963); United States ex rel. Solomon v. Mancusi, *supra*.

In United States v. Mann, *supra*, 291 F.Supp. at 274, this Court (Frankel, J.) reviewed the waiver question in the light of a more recent Supreme Court pronouncement:

It is a simple matter to establish a so-called waiver in the form of failure to demand a prompt trial or to make an early motion to dismiss. If that alone could be decisive in every case, it would be at least a needlessly lavish use of judicial energies to bypass it and work through a detailed appraisal of all the other circumstances as grounds for decision. Cf., e. g., United States v. Simmons, 338 F.2d 804 (2d Cir.1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965); United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir. 1963).

On deeper grounds of principle, it is difficult to accept that interests so "fundamental," Klopfer v. State of North Carolina, 386 U.S. 213, 223, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and so pervasive as those served by the right to a speedy trial are enforceable by judicial sanctions only at the behest of defendants who take the relatively unlikely step of demanding an early trial. All those con-

cerned with the administration of justice are commanded to expedite criminal proceedings "as far as practicable." Fed.R.Crim.P. 50. The reasons for the command are familiar and heavy with the weight of long history. See, e. g., Klopfer v. State of North Carolina, *supra*, at 223–224, 87 S.Ct. 988; United States v. Ewell, *supra*, 383 U.S. at 120, 86 S.Ct. 773.

The length of the delay, the reason for the delay, and the prejudice to the defendant outweigh, by far, the defense counsel's understandable reluctance to move to secure his client's constitutional right to a speedy trial. Again in United States v. Mann, *supra*, 291 F.Supp. at 274–275, the Court said:

It is commonly understood that the defendant will hesitate to disturb the hushed inaction by which dormant cases have been known to expire. See, e. g., United States v. Wai Lau, 329 F.2d 310, 312 (2d Cir.1964), cert. denied, 379 U.S. 856, 85 S.Ct. 108, 13 L. Ed.2d 59 (1965).

However, this court holds that under the facts of this case where a defendant has promptly appeared for pleading and has expeditiously filed his pretrial motions and awaits the government's action in notifying him that it is ready to try him and a judge is available, as he must in this Court, he cannot be said to have waived such a "fundamental" Constitutional right. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The court repeats the observation made in a recent report on the problem involved here:

"From the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial fredom by the de-

**554**

fendant during which time he may flee, commit other crimes, or intimidate witnesses."

See the dissenting opinion of Judge Feinberg in the *Solomon* case, *supra*, 412 F.2d at 93, and United States v. Skinner, *supra*, 308 F.Supp. at 1224.

Again, this court agrees with Judge Feinberg's observation in the *Solomon* case, *supra*, at 93 that, "The surest way to dilute the deterrent effect of the criminal law is to delay its enforcement unduly."

At a meeting of the Judicial Conference of the United States on November 1, 1969, the Conference declared that all criminal cases pending for more than one year whose defendants are available for trial are a "judicial emergency". If a case pending for only one year is a "judicial emergency", one which has been pending for six years is a "judicial catastrophe". To sanction the 4 years' delay which has resulted here from unexcused governmental neglect would subvert both the judicial and public interest expressed by the Conference's declaration.

■ The policy of the law is clearly evidence by Rule 48(b), Fed.R.Crim.P. which empowers a District Court on its own motion to dismiss an indictment if there has been "unnecessary delay in bringing a defendant to trial." In view of the Judicial Conference's declaration, an unexcused four year delay is conclusively such "unnecessary delay" as to justify the exercise of the inherent power of a judge of this Court to dismiss a case such as this for want of prosecution. Rule 48(b); United States v. Research Foundations, Inc., 155 F.Supp. 650, 654 (S.D.N.Y.1957). This court's power, in the exercise of its judicial discretion, to dismiss an indictment in a case of this kind was recently recognized by the Court of Appeals for this Circuit. United States v. Aberson, 419 F.2d 820 (2d Cir. January 6, 1970).

The motion is granted.

So ordered.