**UNITED STATES of America,
Appellant,**

v.

**Samuel Donald KNIGHT, a/k/a
Michael Procak, a/k/a Donald
C. Parker, Appellee.**

No. 364, Docket 75–1316.

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 1975.

Decided Dec. 19, 1975.

William K. Sessions, III, Addison County Public Defender, Middlebury, Vt., for appellee.

William B. Gray, Asst. U. S. Atty., Vermont (George W. F. Cook, U. S. Atty., D. Vt., Jerome F. O'Neill, Asst. U. S. Atty., of counsel), for appellant.

Before MOORE, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

Appellant, United States of America (the "Government"), appeals an order of the United States District Court for the District of Vermont, dismissing an indictment charging appellee Samuel Knight ("Knight") with smuggling drugs into the United States. The lower court determined that the Government had failed to comply with the Vermont District Court Plan For Achieving Prompt Disposition of Criminal Cases ("Plan"), and that the Plan's tolling exceptions were inapplicable. Appellant asserts that the Plan's tolling exceptions, specifically Rule 5(d), apply and that it was ready to proceed to trial within the Plan's six months' time limit. We vacate the order for the reasons hereinafter set forth.

On November 29, 1972, Customs Special Agents Neil Lageman ("Lageman") and George Klinefelter arrested Knight for smuggling drugs as he was entering the United States from Canada by train. Knight gave an alias "Michael Procak" and corresponding identification. Although Lageman did not promise that charges would be reduced or dismissed, Knight agreed to help Lageman investigate drug trafficking between Montreal and New York. Thus, when Knight was taken before a Magistrate the next day, at Lageman's request he was released on his own recognizance. (On the bail release form Knight again identified himself as Procak.) Knight returned to Canada where he was interviewed occasionally by Lageman and another agent.

On December 7, 1972, indictment CR No. 6870, charging Knight with a smuggling violation, was returned. Arraignment was scheduled for January 29, 1973, and on January 23, 1973, the District Court sent two notices ordering the appearance of the addressee, Michael Procak. One notice was sent to a Canadian address supplied by Knight on the bail release form; the other was sent to a Bronx address that Knight had given when he was arrested, but both were returned unopened. Ultimately, Knight failed to appear. Although the U.S. Attorney's office had been informed that Knight would be cooperating with Lageman, it did not inform Lageman concerning Knight's absence. On February 8, 1973, a bench warrant was issued for Knight's arrest.

Meanwhile, the Customs Agents were able to maintain contact with Knight, and they met with him in Montreal on February 4, 1973. Being unaware that matters were amiss, they suggested that he communicate with a Royal Canadian Mounted Policeman in Ontario and convey drug information to him. A few days later Knight told the Canadian officer that he had some information which he would impart at a later date, but there is no evidence that Knight gave an address or telephone number where he could be reached. Such reticence is not surprising considering that Knight subsequently vanished on or before March 1, 1973, and was not heard from again until October 17, 1974, when he was arrested in Florida under yet another alias, "Donald C. Parker".

Knight's Florida arrest was for impersonating another with intent to evade the immigration laws. After Knight was tried and sentenced on this charge, he was returned to Vermont on December 7, 1974. There he faced a superseding indictment which, in addition to the original smuggling violation, charged him with drug violations and contained both his real name and aliases. Knight

was arraigned on this indictment on December 15, 1974, and on January 28, 1975, the Government filed its notice of readiness. Knight moved for dismissal of the indictment alleging, *inter alia*, a violation of the Plan.[1] The motion was ultimately granted[2] and the Government brings this appeal challenging the lower court's application of the Plan.

Rule 4 of the Plan requires dismissal of a defendant's indictment if, after the exclusion of time for applicable Plan tolling exceptions, it is determined that before the Government was ready for trial more than six months had elapsed from the date of the defendant's arrest. Rule 5, which enumerates these tolling exceptions, states:

"In computing the time within which the government should be ready for trial . . . the following periods should be excluded:

\* \* \* \* \* \*

"(d) The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his location is unknown. A defendant should be considered unavailable whenever his location is known but his presence for trial cannot be obtained by due diligence."

The predominant issue in this appeal is whether, in computing the delay after Knight's arrest, the lower court properly included the period of time commencing with Knight's disappearance and ending with his apprehension over a year later in Florida. Appellant does not contest the inclusion of two time periods: (1) the 91 days commencing with appellee's arrest on November 29, 1972, and ending with his disappearance after March 1, 1973; and (2) the 52 days commencing with his return to Vermont on December 7, 1974, and ending on January 28, 1975, when the Government filed its notice of readiness.

Determining that the Government had not exercised sufficient diligence to ascertain Knight's whereabouts after he failed to appear for the arraignment, the lower court decided that Knight was neither "absent" nor "unavailable" and concluded that Rule 5(d) did not exclude the period following Knight's disappearance. It emphasized that the U.S. Attorney was aware of Customs Agent Lageman's interest in the case and that he might have been able to trace Knight through Lageman. We disagree with this approach.

Even assuming for purposes of discussion that the Government's left hand did not know what its right hand was doing after Knight failed to appear for arraignment, when Knight subsequently disappeared he was "absent" within the meaning of Rule 5(d). His location was unknown. There is no evidence what Knight's real address was in Canada nor what name he was using at that address, and having assumed that he was cooperating, the U.S. Attorney had no reason to inquire further. If a defendant's location is unknown, then, without more, he is "absent". Rule 5(d), which prescribes a due diligence standard only with respect to unavailability, reads disjunctively.

Nor is there any reason to read into the Rule due diligence standard which the drafters omitted. Such a construction of the rules would curtail the six months' period in these circumstances to whatever time the defendant was availa-

1. Second Circuit rules for prompt disposition were in effect when Knight was arrested. These rules were superseded by the Vermont District Court Plan which became effective on April 1, 1973. The Plans are virtually identical.

2. Originally the lower court denied the motion subject to possible amendment after hearing the Customs Agent's testimony at the trial of a bail jumping charge for which an indictment had been returned with the superseder. On May 13, 1975, Knight was tried on the charge and found innocent. Based on the trial testimony Knight filed a motion to revise the court's denial of the dismissal motion which the court granted on June 16, 1975, and re-affirmed on August 4, 1975, after denying the Government's motion for Reconsideration and Rehearing.

ble while released on bail before he decided to disappear. If the defendant was not prosecuted, that would preclude subsequent prosecution if the defendant managed to evade apprehension for more than six months. Such an untoward result would undermine public confidence in the adjudication of criminal cases— the touchstone of the Plan. Nor is there even any evidence that governmental due diligence would have disclosed defendant's whereabouts, let alone insured his presence in the country. Consequently, we hold that Knight was "absent" within Rule 5(d) and exclude from the computation of the Plan's six months' period the period commencing with March 1, 1973, and ending when he was arrested in Florida.

■ We also hold that the period of time commencing with his apprehension in Florida and ending with his removal to Vermont on December 7, 1974, is excludable. This period of time falls squarely within explicit exception for delay attributable to the defendant's pending prosecution for unrelated offenses. *See* Rule 5(a); *United States v. Cangiano*, 491 F.2d 906, at 909 (2d Cir.), *cert. denied*, 419 U.S. 904, 95 S.Ct. 188, 42 L.Ed.2d 149 (1974) (applying the Plan's predecessor, the Second Circuit Plan); *cf., United States v. Oliver*, 523 F.2d 253, at 257 (2d Cir. 1975) (applying an identical Plan's Rule 5(d) unavailability exception).[3]

After excluding these periods, the combined delay from the time of Knight's arrest does not exceed the Plan's six months' period. Accordingly, we vacate the lower court order and remand with instructions to reinstate the indictment for further proceedings.

---

3. The Government makes an additional argument that a portion of the elapsed time is excludable as delay attributable to special circumstances. *See, United States v. Valot*, 481 F.2d 22 (2d Cir. 1973). In our view, it is unnecessary to reach this argument, and, consequently, we intimate no opinion about it.